SHEPARD *v.* HAGAN.

1. Mines and Minerals—Construction of Deed—Ambiguity.

In suit to determine rights under a mineral deed wherein granting clause granted defendant ''an undivided one-sixteenth interest in and to all of the oil, gas and other minerals'' but thereafter recited that deed was made subject to the terms of an outstanding lease, also in favor of grantees, but covered and included ''one-sixteenth of all of the oil royalty'' and that grantees were to be paid ''one-sixteenth of the money rentals which may be paid to extend the term within which a well may be begun,'' terms of lease *held*, so conflicting as to render instrument ambiguous and permit an examination of attendant circumstances for the purpose of ascertaining the true intent of the parties at time deed was executed.

2. Same—Mineral Deed—Ambiguity—Evidence—Reformation of Instruments.

In suit to adjudicate conflicting claims as to division of the reserved one-eighth royalty between the grantors and grantees under an ambiguous mineral deed, trial court's finding that parties intended to transfer one-half of the royalties instead of one-sixteenth thereof and, in effect reforming the deed, *held*, amply supported by testimony introduced.

Appeal from Arenac; Shaffer (John C.), J. Submitted October 10, 1939. (Docket No. 105, Calendar No. 40,714.) Decided December 19, 1939.

Bill by James R. Shepard and Ida May Shepard against Melvin W. Hagan, M. Clyde Hagan, and McClanahan Pipe Line Company, a Michigan corporation, to establish rights to oil royalties, for an accounting and other relief. Cross bill by defendants Hagan against plaintiffs for construction of a mineral deed and other relief. Rowmor corporation, a Michigan corporation, and others intervened as

parties defendant. From decree rendered, plaintiffs appeal. Affirmed.

*Harry E. Converse* and *Yeo & Bilitzke,* for plaintiffs.

*Earl R. Chapin* and *Harry C. Kinne,* for defendants Hagan.

*McNamara & Browning,* for defendant McClanahan Pipe Line Company.

NORTH, J. For some time prior to the transactions involved in this suit, plaintiff Ida May Shepard was the owner of 146 acres of land in Arenac county. Defendants Melvin W. Hagan and M. Clyde Hagan in November, 1933, obtained a three-year oil and gas lease covering this property which provided for a royalty of one-eighth of the oil and gas produced to the lessors, James R. Shepard and Ida May Shepard. In February or March, 1934, plaintiffs gave to defendant Hagan & Hagan a so-called mineral deed of an interest in the oil, gas, and other minerals in the same land. Both the above-mentioned oil lease and the mineral deed were executed not only by plaintiffs, but by other members of their family. However, this latter circumstance has no bearing on the outcome of the litigation. The controversy arises from conflicting claims as to the division of the reserved one-eighth royalty between plaintiffs and defendant Hagan & Hagan, such royalty having accrued under a subsequent lease to Leonard F. Ward.

Hagan & Hagan were oil operators of extensive experience. At the time of the transaction giving rise to this suit, Mrs. Shepard was 68 years of age and Mr. Shepard, 71. The latter was an educated man, formerly a school teacher, but for many years

has been afflicted with total deafness. Following some negotiations as to Hagan & Hagan purchasing an interest in either the mineral rights in the Shepard 146 acres or in the royalty rights reserved in the outstanding oil and gas lease, one of the Hagans delivered the blank form of the instrument in suit to Mr. Shepard, who thereafter drafted this so-called mineral deed using the provided blank form.

Because of conflicting claims arising from the terms of the mineral deed as to the division of the one-eighth royalty between plaintiffs and defendant Hagan & Hagan, the McClanahan Pipe Line Company, to which the oil produced was being delivered, gave notice of withholding payments of accruing royalties. Thereupon plaintiffs filed this bill of complaint for the purpose of securing an adjudication of the conflicting claims to the royalties made by plaintiffs on the one hand and defendant Hagan & Hagan on the other. Defendant Hagan & Hagan answered and filed a cross bill wherein they seek like relief and, if necessary, reformation of the so-called mineral deed. The real controversy is that plaintiffs claim a right to fifteen-sixteenths of the royalties with one-sixteenth to Hagan & Hagan; while the latter claim one-half of the royalty. The trial judge sustained the claim of defendant Hagan & Hagan, and in effect granted reformation of the mineral deed. Plaintiffs have appealed.

We quote the conflicting provisions in the mineral deed. The granting clause reads: "grant, sell, convey, * * * unto said grantees an undivided one-sixteenth interest in and to *all of the oil, gas and other minerals* in and under, and that *may be produced from* the following described land."

But later in the instrument are the following recitals:

"Said land being now under an oil and gas lease executed in favor of Hagan & Hagan, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-sixteenth of all of the oil royalty; and gas rental or royalty due and to be paid under the terms of said lease insofar as it covers the lands above described.

"It is understood and agreed that one-sixteenth of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantees and in the event that the above described lease for any reason becomes canceled or forfeited, then and in that event an undivided one-sixteenth of the lease interests and all future rentals on said land for oil, gas and other mineral privileges shall be owned by the said grantees owning one-sixteenth of all oil, gas and other minerals in and under said lands, together with one-sixteenth interest in all future events."

It is clear that the terms of this mineral deed are so conflicting that the instrument is rendered ambiguous. The record justifies the conclusion that there was mutual mistake on the part of all concerned. As noted by the trial judge, the testimony discloses such a situation as to render it entirely proper to resort to an examination of attendant circumstances for the purpose of ascertaining and determining what in fact was the true intent of the parties at the time they executed this mineral deed. For the most part the pertinent facts are so succinctly embodied in the opinion of the trial judge that we quote from it somewhat at length:

"I am very much impressed with the consistent claim made by Mr. James R. Shepard that he had sold one-half of his royalty. Now Mr. Shepard got that idea from this instrument, he thought that was what this instrument meant and he says so consistently, apparently from the testimony all the way

through. The children, the two boys, admit that, at least Lyall admits, that his father always claimed that was his intention, never claimed it was any different than a sale of a one-half of the royalty, he made that statement, and he makes it today, that he believed that was what he was selling until told that it was not what the instrument conveyed. Lyall, the testimony shows, even by his admissions, what he has admitted on the stand, that he has admitted to others, that he has made the statement that they sold one-half of their royalty. I think it was the clear intention of the Shepards at that time to sell one-half of their royalty. Here was undeveloped oil land, they were getting $300, which from the testimony was very much needed at that time, there was an incentive for them to sell, they were getting it for an interest in royalty that at that time did not look very promising. * * * "Undoubtedly Mr. Shepard was confused about that and undoubtedly the rest of the members of the family were confused by the terms used, but when we place ourselves back in the situation as it existed at that time with the undeveloped oil area, other prices that was paid, it does seem to me that Hagan & Hagan were not buying—never was their intention to buy one-sixteenth of one-eighth and pay that money, and apparently Mr. Shepard did not think that they were and he so informed the counsel."

The testimony abundantly sustains the above-quoted review by the circuit judge; and it appears that the plaintiff, Mr. James R. Shepard, thought and repeatedly stated that the mineral deed conveyed to defendant Hagan & Hagan one-half of the one-eighth royalty held by plaintiff. And such seems to have been the understanding of Lyall Shepard, an adult son of plaintiffs who signed the deed. And, still further, the trial judge in his opinion adverts to the following facts. The 1933 oil and gas lease to defendant Hagan & Hagan expired in November, 1936. Thereafter another lease known as the Ward

lease was executed. Under this lease there is production and accrued royalties. In the Ward lease executed by plaintiffs it is recited:

"The lessors have conveyed a one-sixteenth interest in and to all oil and gas in and under said land by deed executed on the 6th day of February, 1934."

This reference was specifically to the mineral deed given by plaintiffs to Hagan & Hagan, both by reference to the exact date of the deed and its record in the register of deeds' office. When the Ward lease was consummated the Shepards were represented by counsel. Under the circumstances the recital of what in fact was the interest of Hagan & Hagan in the instrument signed by plaintiffs is very persuasive. Further recital of the details of the testimony would avail nothing. Our review of this record satisfies us that the circuit judge, who saw and heard the witnesses, gave the case careful consideration and reached the right conclusion.

Appellants assert that the allegations contained in the cross bill of Hagan & Hagan are insufficient to justify decreeing relief which amounts to a reformation of the mineral deed. While the allegations of the cross bill were not as detailed and specific as might be desired, we are satisfied that this pleading has not been misleading or in any way prejudicial to the rights of any of the respective parties. Reversal on this ground would not be justified. Numerous other questions are presented in appellants' brief, but they are of minor importance and clearly were not at all controlling of the outcome of this case.

The decree entered by the circuit court is affirmed, with costs to defendants Hagan & Hagan and McClanahan Pipe Line Company.

Butzel, C. J., and Wiest, Bushnell, Sharpe, Potter, Chandler, and McAllister, JJ., concurred.